# Bergdoll, Appellant, *v.* Sopp.

*Mortgage loan—Collateral security—Dividend on insolvent's estate—Insolvency.*

Where a loan of $11,000 was made on condition that the father of the borrower should execute a mortgage for $8,000 as collateral security and there is a contention as to whether the mortgage was given to secure the whole indebtedness or only $8,000 of the debt, it is for a jury to decide what the mortgage was designed to cover, and if their finding is that the mortgage was only to embrace $8,000 of the indebtedness, then the lender must credit on the $8,000 of the indebtedness covered by the mortgage the ratable portion of a dividend received on the whole claim from the borrower's insolvent estate, but if the finding shall be that the mortgage was collateral security for the entire indebtedness, the creditor may credit the dividend generally on the entire indebtedness and recover the full amount of the mortgage.

Argued Jan. 18, 1910.   Appeal, No. 214, Jan. T., 1909, by plaintiff, from judgment of C. P. No. 3, Phila. Co., Sept. T., 1905, No. 925, for defendant non obstante veredicto in case of Emma C. Bergdoll v. Ernst Sopp.   Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ.   Reversed.

Assumpsit for balance due under a mortgage.   Before McMICHAEL, P. J.

The facts are stated in the opinion of the Supreme Court.

Verdict for plaintiff for $1,581.56.   The court subsequently entered judgment for defendant non obstante veredicto.

*Errors assigned* were (1) in taking from the jury the interpretation of the parol contract of suretyship; and (2) in entering judgment for defendant non obstante veredicto.

*George S. Graham*, with him *Joseph Gilfillan*, for appellant.—
In some states and also in the United States courts, the rule applies that in involuntary payments the creditor can apply the amount realized from the insolvent debtor's estate, or security which has been foreclosed or sold out, in such a way as to best protect his own interests: Kortlander v. Elston, 52 Fed. Repr. 180; California Nat. Bank v. Ginty, 108 Cal. 148 (41 Pac. Repr. 38); Small v. Older, 57 Iowa, 326 (10 N. W. Repr. 734); Wilson v. Allen, 11 Oregon, 154 (2 Pac. Repr. 91); Wood v. Callaghan, 61 Mich. 402 (28 N. W. Repr. 162); Advance Tresher Co. v. Hogan, 74 Ohio, 307 (78 N. E. Repr. 436); Morrison v. Bank, 9 L. R. A. 282.

*Alex. Simpson, Jr.*, with him *Martin H. Stutzbach*, for appellee.—In involuntary payments made by virtue of a decree of court on the distribution of an insolvent estate, the application is to be pro rata: Burnell's Estate, 9 W. N. C. 334, aff'd in Weightman's App., 10 W. N. C. 155; Bardwell v. Lydall, 20 Eng. Com. Law, 220; Raikes v. Todd, 35 Eng. Com. Law, 546; Thornton v. McKewan, 1 Hemming & Miller's Ch. 525; Blackstone Bank v. Hill, 27 Mass. 129; Commercial Bank v. Cunningham, 41 Mass. 270; Browning v. Carson, 163 Mass. 255 (39 N. E. Repr. 1037); Cowperthwaite v. Sheffield, 1 Sandf. (N. Y.) 416; Orleans County Nat. Bank v. Moore, 112 N. Y. 543 (20 N. E. Repr. 357); Cohen v. State Bank of Florida, 29 Fla. 655 (11 So. Repr. 44).

OPINION BY MR. JUSTICE BROWN, March 7, 1910:

The son of the appellee borrowed $11,000 from the appellant on or about September 10, 1903. She lent him this sum upon condition that the father would execute the mortgage in suit as collateral security to her. Her contention is that it was given as security for the whole indebtedness of $11,000, while the appellee insists that it was to be collateral for only

$8,000 of the debt.  Subsequently the son's indebtedness to the appellant was increased and amounted at the time of his death—not long after the execution of the mortgage— to $12,200.27.  His estate was insolvent, and the appellee received a dividend of 16½¼ per cent upon her whole claim of $12,200.27, amounting to $2,015.95.  After receiving this dividend she procured a writ of scire facias to be issued on her mortgage, claiming that she had the right to apply the $2,015.95 to the unsecured part of the debt due to her, and, upon that theory, seeks to recover the full face of the mortgage, with interest, costs and counsel fees.  The appellee, claiming that he was entitled to have the 16½¼ per cent dividend credited pro rata on the $8,000 of the indebtedness which his mortgage secured, paid the difference, with interest, costs and counsel fees, and the case thereupon proceeded to trial for the determination of the single question thus raised, viz., Had the plaintiff the right to apply the dividend paid her to the unsecured part of her claim?  The trial judge instructed the jury to render a verdict for the plaintiff, but the court in banc subsequently entered judgment for the defendant non obstante veredicto.

If it were admitted or it clearly appeared that the appellee executed the mortgage as collateral security for but $8,000 of the indebtedness contracted by his son, the judgment of the court below could not be disturbed.  If his mortgage was to be security for but part of the debt, upon his payment of that part after the death of his son he would have been subrogated to all the rights of the appellant upon that part against the insolvent estate of the debtor.  He did not so pay, but, if his mortgage was security for but $8,000, his failure to pay does not affect his equities against the appellant, and she must credit on $8,000 of the indebtedness the ratable portion of the dividend she received upon her whole claim, just as she would be compelled to allow such credit if she held a separate obligation of the decedent upon which the appellee was surety.  Many cases have been cited by counsel on both sides as to the appropriation of voluntary payments made by a debtor, but such a payment is not here involved.

The payment made to the appellant was an involuntary one, so far as the debtor was concerned. It was made to her by the law, through the orphans' court, as a dividend upon the entire sum due her by the decedent, and if part of that indebtedness was specially secured, a ratable portion of the payment made to her was to the relief of the surety, and equity will compel her to relieve him pro tanto: Weightman's App., 10 W. N. C. 155; Bardwell v. Lydall, 20 Eng. Com. Law, 220; Raikes v. Todd, 35 Eng. Com. Law, 546; Thornton v. McKewan, 1 Hemming & Miller's Ch. 525; Blackstone's Bank v. Hill, 24 Peck. (Mass.) 270; Commercial Bank v. Cunningham, 10 Peck. (Mass.) 129; Browning v. Carson, 163 Mass. 255; Cowperthwaite v. Sheffield, 3 N. Y. 243; Orleans County National Bank v. Moore, 112 N. Y. 543; Cohen v. State Bank of Florida, 29 Fla. 655. In Bardwell v. Lydall, supra, the defendant had guaranteed the plaintiffs against debts to be contracted by a third party to the extent of £400; that party became indebted to them in the sum of £625. Upon his insolvency there was a dividend of 8s. 7d. per pound, and in holding that a pro rata part of the dividend must be allowed as a credit upon the guaranteed claim of £400, the court said: "For suppose the sum which exceeds the £400 had been covered by the guaranty of another person, could it be contended that the plaintiffs might have applied the whole of the dividends to either part of the demand at their election, and thus have varied, at their own pleasure, the extent of the responsibility of the two sureties? In the case supposed, we think that each of the sureties might have claimed a ratable deduction, out of each pound of the amount of debt to which their respective guaranties extended. And if so, the same result appears to us to follow, whether the excess beyond the £400 is covered by the guaranty of a stranger, or the creditor is contented to become his own surety for the residue, etc., and to look for payment of it to the principal debtor alone. Again, suppose in the principal case the defendant had paid the £400 to the plaintiffs before the plaintiffs had made their claim against Mayhew's estate. There could be no doubt, in that case, that if they proved the whole demand, they would

have been trustees for the defendant for the dividend on the £400; or, if they had declined to prove, that the defendant might have received the dividend on that sum, if the trust-deed admitted of such an arrangement. And what difference can it make in the equitable rights of the defendant whether such payment is made before, or is sought to be enforced against him after the payment pro rata out of the estate of the principal? . . . . The payment was not a payment in gross, but a payment specifically made by the trustees, and specifically received by the plaintiffs, as so much in each and every pound of the whole amount of the debt; so that there is a specified appropriation of payment to each and every part of the demand, which appears to us, in law, to operate as a part payment of the £400, as well as a part payment of the residue." The foregoing is the whole law of the case if the appellee's mortgage was given and accepted as security for but $8,000.

From the testimony of the appellee on his cross-examination the jury might have found that the mortgage was not given as "collateral for every dollar of the $11,000." And if they had so found, the judgment of the court below would be right. On the other hand, there was evidence from which they could have found that the mortgage was given as a general indemnity against any loss on the entire $11,000 indebtedness. The testimony of Borasky, if believed, would have justified such a finding, which would sustain the contention of the appellant that the appellee is not entitled to any credit on his mortgage, as the whole dividend received by her is insufficient to pay the excess over the $8,000. The judgment is reversed with a venire facias de novo, that the case may be submitted to a jury in accordance with the views expressed in this opinion.